# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GWENDOLYN D. PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0781 (ABJ) |
| | ) | |
| JAMES MATTIS,[1] | ) | |
| *In His Official Capacity as* | ) | |
| *Secretary of the Department of Defense*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

On May 27, 2015, Gwendolyn D. Pierce filed a lawsuit against defendant James Mattis, in his official capacity as Secretary of the United States Department of Defense. Compl. [Dkt. # 1]. Plaintiff alleges that she received lower performance evaluations than her peers based on her race, sex, and prior protected activity, and that these poor ratings caused her to receive lower pay in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq*. Compl. On June 22, 2016, the Court denied defendant's motion for summary judgment, *see* Mem. Op. & Order [Dkt. # 15], and defendant filed an answer on July 11, 2016. Answer [Dkt. # 16]. Plaintiff has since moved for leave to file an amended complaint under Federal Rule of Civil Procedure 15(a)(2). Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 20] ("Pl.'s Mot.").

The Court will grant plaintiff's motion in part and deny it in part. Plaintiff may add Count III, hostile work environment in violation of Title VII, Count IV, violation of the Rehabilitation

---

1 Plaintiff's complaint named former Secretary of the Department of Defense Ashton B. Carter. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor as defendant.

Act of 1973, and Count V, retaliation in violation of the Rehabilitation Act, since those claims had not been administratively exhausted at the time plaintiff filed her original complaint, and because defendant does not oppose amending the complaint to include those claims. But, plaintiff's proposed amendment with regard to a *Bivens* claim would be futile, so plaintiff's motion to amend her complaint to include that claim will be denied.

## BACKGROUND

Plaintiff is an African-American female who began her career at the National Geospatial-Intelligence Agency ("NGA") in 1995 as a Visual Information Specialist. Compl. ¶¶ 4, 7. In 2007, plaintiff was reassigned to the position of Multimedia Specialist, Pay Band 4, with a base pay of $71,693.00 and a total pay of $85,021.00. Compl. ¶ 7. Between 2007 and 2011, plaintiff's pay rose each year until her total pay reached $98,983.00. Compl. ¶ 8.

Plaintiff claims that she "received the lowest [performance] rating of any Multimedia Band 4 employee and the lowest pay increase" "[a]t the time of her 2009-2012 performance appraisal," despite having seniority among the other Band 4 employees and performing comparable work to her peers who received higher ratings. Compl. ¶¶ 22–23, 25, 30–31 (emphasis omitted). She alleges that the lower rating, and ultimately lower salary increase, was the result of race and sex-based discrimination and retaliation. Compl. ¶¶ 35, 38.

In June 2010, plaintiff filed an "informal EEO complaint" against the NGA, alleging a "racially hostile work environment" after an employee hung a monkey doll in a noose in the workplace. Compl. ¶ 10. And in April 2011, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging race and gender discrimination, as well as claims for unlawful retaliation. Compl. ¶ 33. She received a notice of her right to sue from

2

the EEOC regarding the formal complaint on March 2, 2015, Compl. ¶ 33, which led to the filing of this lawsuit.

On October 3, 2016, plaintiff filed her Motion for Leave to File an Amended Complaint. Pl.'s Mot. She seeks to add three new claims that she contends had not been administratively exhausted at the time she filed her original complaint: (1) hostile work environment in violation of Title VII; (2) violation of the Rehabilitation Act of 1973; and (3) retaliation in violation of the Rehabilitation Act. *Id.* at 1; *see* Pl.'s Proposed First Am. Compl. [Dkt. # 20-2] ("Proposed Am. Compl.") ¶¶ 73–81. Plaintiff also seeks to add a claim pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) against two additional parties – Special Agent Michael Gray and Investigator Kay Pond. Pl.'s Mot. at 1–2; Proposed Am. Compl. ¶¶ 82–84.

The facts related to plaintiff's *Bivens* action are set forth in the proposed amended complaint. Plaintiff alleges that in January 2012, she was placed on disability for carpel tunnel syndrome, applied for and was granted workers' compensation benefits, and was placed on leave. Proposed Am. Compl. ¶ 46. In early 2013, plaintiff and her physician advised the Office of Workers' Compensation Program ("OWCP") that plaintiff would need surgery on one of her wrists. Proposed Am. Compl. ¶ 47. Per the OWCP's request, plaintiff submitted to an independent medical examination ("IME") in March 2013, and she "specifically advised the [independent medical examiner] of pastoral, volunteer and other activities she was engaging in." Proposed Am. Compl. ¶ 48. Plaintiff claims that the independent medical examiner "noted these activities in [his] report and found that [her] performance of these activities were inconsequential to her diagnosis or his disability finding." Proposed Am. Compl. ¶ 48. According to the proposed amended complaint, "[a]t around the same time, about three unknown individuals walked into

3

NGA's Office of the Inspector General [("OIG")] and opined that [plaintiff] was not disabled," and "Kay Pond, an investigator with NGA's OIG and Michael Gray, a special agent with [Department of Labor] OIG, embarked on a year-long witch-hunt designed to *create* probable cause." Proposed Am. Compl. ¶¶ 49–50 (emphasis in original).

The proposed amended complaint states that in approximately March 2014, "the OIG investigators sought a search warrant alleging that [plaintiff] had made false statements on an OCWP form." Proposed Am. Compl. ¶ 52. Plaintiff alleges that "Michael Gray executed a sworn affidavit to the United States District Court for the District of Maryland that 'over the last 2 years, [plaintiff] has never reported any outside employment or related income to OWCP,'" and that "[t]his averment was false." Proposed Am. Compl. ¶ 52.

Plaintiff further alleges that the agents executed a search warrant of her home in Maryland on April 17, 2014, and that plaintiff was "physically assaulted during the course of the search." Proposed Am. Compl. ¶ 53. Plaintiff claims that, as a result of the search, "the United States Attorney for the Eastern District of Virginia sent [her] a letter advising her that she was the 'target' of a criminal investigation related to the OWCP form." Proposed Am. Compl. ¶ 55. Ultimately, on October 1, 2014, plaintiff pled guilty to one misdemeanor count of making a false statement. Proposed Am. Compl. ¶ 56. In the wake of the guilty plea, plaintiff's employer, the NGA, issued a notice of proposed termination on November 6, 2014, and plaintiff was terminated on December 16, 2016. Proposed Am. Compl. ¶¶ 57, 59. However, at the sentencing proceeding on December 23, 2016, the court permitted plaintiff to withdraw her guilty plea, and it dismissed the criminal charges in light of representations made by the prosecution in connection with the calculation of the loss under the U.S. Sentencing Guidelines. Proposed Am. Compl. ¶¶ 58, 60. According to the proposed amended complaint, OWCP submitted a statement "that there was no loss to the

4

government since it had determined that [plaintiff] was indeed disabled and eligible for workers compensation despite her outside activities." Proposed Am. Compl. ¶ 58.

While plaintiff alleges in paragraph 61 of the proposed amended complaint that both the prosecution and the termination of her employment were in retaliation for her protected activity, plaintiff proposes to bring a *Bivens* claim against the two investigators in their personal capacities, alleging that they violated plaintiff's rights under the Fourth Amendment "when they subjected her to an unreasonable search unsupported by probable cause." Proposed Am. Compl. ¶ 83. (There are no counts predicated on the assault that allegedly took place during the execution of the warrant, nor does the complaint include any allegation that either of the two investigators were the ones who assaulted plaintiff). The proposed Count VI concludes that as a result of the investigators' actions, plaintiff "has suffered, and continues to suffer, severe pain and suffering," "emotional distress," "loss of earnings and other employment benefits and job opportunities." Proposed Am. Compl. ¶ 84.

Defendant has opposed the motion for leave to amend, contending that the amendment would be futile since the *Bivens* claim would not survive a motion to dismiss on multiple grounds including the statute of limitations, a lack of personal jurisdiction over the investigators, and qualified immunity. Def.'s Resp. to Pl.'s Mot. [Dkt. # 22] ("Def.'s Opp.") at 3, 6–10, 13. On December 2, 2016, plaintiff replied in support of her motion. Pl.'s Reply Mem. in Supp. of Pl.'s Mot. [Dkt. # 25] ("Pl.'s Reply").

The Court will deny plaintiff's motion for leave to amend the complaint to add the *Bivens* claim since, even if the three-year statute of limitations applies,[2] and even if the Court could

---

2 Defendant contends that plaintiff's *Bivens* claim is "most akin to assault, wounding and false imprisonment," which are governed by the one-year statute of limitations under D.C. Code §12-301(4), Def.'s Opp. at 13, while plaintiff maintains that "it is well-settled that a three-year statute of limitations applies to *Bivens* actions." Pl.'s Reply at 11. Courts in this Circuit have observed that even though the three-year statute of limitations from D.C. Code § 12-301(8) does not automatically apply in *Bivens* actions, it applies to most of them because it better accounts for the goals of *Bivens* actions. *See, e.g.*, *Bame v. Clark*, 466 F. Supp. 2d 105, 108–09 (D.D.C. 2006) (recognizing that the "personal injury statute of limitations does not automatically apply to *Bivens* claims" but that "in this Circuit, the state of the law is that the three year statute of limitations applies . . . unless the claim is for constitutional torts specifically listed in section 12-301(4)"); *Lederman v. United States*, 131 F. Supp. 2d 46, 61 (D.D.C. 2001) ("This Circuit has recognized, however, that 'interests respectively protected by federal constitutional law and local assault law are not congruent, and that injuries inflicted by officers acting under color of (legal authority) are significantly different in kind from those resulting from acts of private persons.'"), quoting *Payne v. Gov't of D.C.*, 559 F.2d 809, 817 n.31 (D.C. Cir. 1977); *id.* at 62 ("Applying the general limitations provision better accounts for the goals of a *Bivens* action, namely, to promote uniformity and finality for potential litigants bringing federal constitutional claims."). However, in this case, plaintiff claims that Agent Gray and Investigator Pond violated her Fourth Amendment rights by subjecting her to an unreasonable search pursuant to a "search warrant [that] was without basis" and "unsupported by probable cause." Proposed Am. Compl. ¶¶ 53, 83. And courts have held that a "Fourth Amendment search and seizure claim is analogous to false arrest," which falls under a one-year statute of limitations. *Wormley v. United States*, 601 F. Supp. 2d 27, 35 (D.D.C 2009) (holding that plaintiff's overdetention claim was analogous to false imprisonment, the Fourth Amendment search and seizure claim was analogous to false arrest, and the false statement claims were analogous to libel or defamation, which were all subject to a one-year statute of limitations); *see* D.C. Code § 12-301(4). Here, plaintiff's Fourth Amendment claim is quite similar to a false arrest claim since plaintiff maintains that the execution of the search warrant led to her unfounded prosecution. Further, plaintiff alleges that she was "physically assaulted during the course of the search" of her home. Proposed Am. Compl. ¶ 53. And an assault claim would also fall under the one-year statute of limitations. *See* D.C. Code § 12-301(4). However, the Court need not decide which statute of limitations period applies since the claim fails on other grounds.

exercise personal jurisdiction over Investigator Pond and Agent Gray,[3] plaintiff fails to state a claim upon which relief can be granted because both agents are entitled to qualified immunity.

---

[3] Plaintiff has the burden of establishing personal jurisdiction over Agent Gray and Investigator Pond. *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). Under the District of Columbia's long-arm statute, the Court may exercise personal jurisdiction over a person in connection with a claim for relief arising from the person's "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). The "transacting business" provision "of the long-arm statute has been interpreted to be coextensive with the Constitution's due process limit." *First Chicago Int'l v. United Exch'g Co.*, 836 F.2d 1375, 1377 (D.C. Cir. 1988). Thus, the inquiry is whether the defendant has the requisite "minimum contacts" with the District so that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 317 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). "[A] single act may be sufficient to constitute transacting business, so long as that conduct is voluntary and deliberate, rather than fortuitous." *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100 (D.D.C. 2008), quoting *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1093 (D.C. 2008).

In plaintiff's proposed amended complaint, she alleges that Agent Gray is an agent for "the Department of Labor's Labor, Racketeering and Fraud Investigations, Office of the Inspector General," and that Investigator Pond "is an Investigator for NGA's Office of Inspector General," Proposed Am. Compl. ¶¶ 7–8, but she never alleges where their offices are located or that they conducted any business in the District of Columbia. Rather, plaintiff claims only that defendants "transacted business" in Maryland when "Pond, Gray and other federal authorities executed a search warrant at [plaintiff's] home in Maryland." Proposed Am. Compl. ¶ 53. However, in her reply, plaintiff asserts that "Gray's duty location was at the Office of Inspector General in Washington, D.C.," and that "the defendants investigated, conducted interviews and performed surveillance of many of [plaintiff's] activities within Washington, D.C." Pl.'s Reply at 11–12. Plaintiff's only specific allegation as to Investigator Pond's connection to the District of Columbia is located in a footnote in plaintiff's reply in which she claims that on "at least one occasion, for instance, Gray and Pond conducted a covert surveillance operation, complete with hidden cameras . . . at [plaintiff's] church in the District of Columbia." *Id.* at 12 n.3. While Agent Gray's regular work location within the District of Columbia may be sufficient to create the necessary contacts with the jurisdiction to comport with due process, the Court has serious concerns about whether Investigator Pond's activities in the District suffice to give rise to personal jurisdiction over a Virginia investigator who allegedly violated plaintiff's constitutional rights in Maryland. But given other legal deficiencies that render the amendment futile, the Court does not need to decide this issue.

However, since defendant does not oppose the addition of the other three causes of action, plaintiff's motion for leave to file an amended complaint will be granted as to those three claims.[4]

## STANDARD OF REVIEW

When a party seeks to amend its pleading after a responsive pleading has been served, the Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). When evaluating whether to grant leave to amend, however, the Court must consider these factors: (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) repeated failure to cure deficiencies by amendments previously allowed. *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court may deny leave to amend based on futility if the proposed claims would not survive a motion to dismiss. *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

---

4     Plaintiff seeks to add three new claims that she contends had not been administratively exhausted at the time she filed her original complaint. According to the proposed amended complaint, plaintiff filed an EEOC complaint on July 24, 2014 "alleging discrimination and retaliation in the issuance and execution of the search warrant and the malicious prosecution." Proposed Am. Compl. ¶ 64. On July 6, 2016, she withdrew her request for a hearing and has been awaiting a final agency decision. Proposed Am. Compl. ¶ 64. Additionally, plaintiff claims that she filed another EEOC complaint on May 20, 2015 "protesting the termination of her health benefits, management providing false information that led to her termination, revocation of her health benefits, termination of her workers compensation benefits and interference with her disability retirement and unemployment benefits application based on race, gender, disability and retaliation." Proposed Am. Compl. ¶ 66. "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985). But defendant has neither challenged the timeliness of the administrative exhaustion of plaintiff's additional claims, nor opposed the proposed amendments to add the three claims.

# ANALYSIS

Plaintiff seeks to add a claim to her complaint alleging that Agent Gray and Investigator Pond violated her "rights under the Fourth Amendment of the United States Constitution when they subjected her to an unreasonable search unsupported by probable cause." Proposed Am. Compl. ¶ 83. Defendant contends that such an amendment would be futile because Agent Gray and Investigator Pond are entitled to qualified immunity and, therefore, plaintiff's claim would not survive a motion to dismiss. The Court agrees.

Qualified immunity is "a defense that shield officials from suit if their conduct 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ortiz v. Jordan*, 562 U.S. 180, 183 (2011), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official enjoys protection from liability "where [his or her] conduct is objectively reasonable in light of existing law." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). On the other hand, an official is not shielded where he or she "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id.*, quoting *Harlow*, 457 U.S. at 819. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because the qualified immunity doctrine is intended to "ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery,'" *id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987), the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 231–32, quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Whether an official is entitled to qualified immunity is resolved by a two-step analysis. "First, the court asks whether 'the facts alleged show the [official's] conduct violated a constitutional right," and "[i]f so, then the court must determine 'whether the right was clearly established' at the time of the alleged violation." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011), quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has clarified that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first" in light of the circumstances of the particular case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Pearson*, 555 U.S. at 236. Here, the only question the Court needs to address is whether plaintiff has alleged facts to show that Agent Gray and Investigator Pond violated her Fourth Amendment rights by subjecting "her to an unreasonable search unsupported by probable cause." Proposed Am. Compl. ¶ 83. Since she has not, that ends the inquiry. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Plaintiff maintains that her Fourth Amendment rights were violated because the affidavit Agent Gray prepared to support his request for a search warrant was "untrue and misleading" and resulted in the search of her home without probable cause. Pl.'s Reply at 9. The Supreme Court has explained that an expectation of truthfulness attaches to all warrant applications:

> When the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing. This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quotation and citations omitted) (emphasis in original). Therefore, the Fourth Amendment is violated where "a false statement knowingly and

10

intentionally, or with reckless disregard for the truth, [is] included by the affiant in the warrant affidavit, . . . the allegedly false statement is necessary to the finding of probable cause," and the affidavit supplies the predicate for the authority to search. *Franks*, 438 U.S. at 155–56; *Lane v. District of Columbia*, 211 F. Supp. 3d 150, 177 (D.D.C. 2016) (finding the officer was not entitled to qualified immunity and had violated plaintiffs' Fourth Amendment rights by obtaining a warrant that contained "knowing or reckless misstatements and material omissions" and "caus[ed] the search to occur").

Taking plaintiff's allegations as true, plaintiff has not alleged sufficient facts to demonstrate that Agent Gray or Investigator Pond violated her Fourth Amendment rights. The complaint alleges that it was Agent Gray who prepared the affidavit in support of the search warrant, and in it, he averred that "over the last 2 years, [plaintiff] has never reported any outside employment or related income to OWCP." Proposed Am. Compl. ¶ 52. Although plaintiff states in her complaint that "[t]his averment was false," Proposed Am. Compl. ¶ 52, she does not allege that Agent Gray knew that it was a false statement at the time he included it in his affidavit in support of the warrant. And, while plaintiff points to the IME report as evidence supporting her diagnosis and disability, Proposed Am. Compl. ¶ 50, and she argues in support of her motion for leave to amend that this report was "fully available to the investigators," Pl.'s Reply at 9, the complaint does not allege that the investigators intentionally ignored any facts or conclusions contained in the report. Plaintiff alleges that Agent Gray applied for a search warrant "[a]fter investigating [her] for one year," Proposed Am. Compl. ¶ 52, but beyond the conclusory allegation "that the government had no reasonable cause to believe that any crime had been committed," Proposed Am. Compl. ¶ 50, the complaint sets forth no facts from which one could conclude that

the Agent Gray, the affiant, procured the warrant through knowing or reckless misrepresentations or omissions, or that Investigator Pond violated the Fourth Amendment at all.

Based on Agent Gray's affidavit, a Magistrate Judge for the United States District Court for the District of Maryland issued a search warrant, which Agent Gray, Investigator Pond and other federal authorities executed. Proposed Am. Compl. ¶ 53; Def.'s Opp. at 10; Ex. A to Def.'s Opp. [Dkt. # 22-1]. But aside from the conclusory statement that Agent Gray and Investigator Pond utilized an "improperly procured search warrant," Proposed Am. Compl. ¶ 55, plaintiff provides no factual allegations to support the inference that the warrant was obtained in contravention of the Constitution. And the complaint does not tie the execution of the warrant to the flawed prosecution in any way.

Moreover, even if Agent Gray was mistaken in his assessment of probable cause at the time, he would still be protected by qualified immunity because "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter*, 502 U.S. at 229, quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *id.* at 228–29 ("Even if we assumed, *arguendo*, that they (*and* the magistrate) erred in concluding that probable cause existed to arrest [defendant], the agents nevertheless would be entitled to qualified immunity because their decision was reasonable, even if mistaken."), citing *Anderson*, 438 U.S. at 641.

Because plaintiff has not alleged sufficient facts to show that Agent Gray and Investigator Pond violated her Fourth Amendment rights, the investigators are entitled to qualified immunity and plaintiff has failed to state a claim upon which relief can be granted. Therefore, plaintiff's proposed *Bivens* claim would not survive a motion to dismiss, and the proposed amendment to plaintiff's complaint would be futile.

## CONCLUSION

For all of those reasons, it is hereby

**ORDERED** that plaintiff's Motion for Leave to File an Amended Complaint [Dkt. # 20] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may file a First Amended Complaint that includes only the allegations relating to Count III, hostile work environment in violation of Title VII, Count IV, violation of the Rehabilitation Act of 1973, and Count V, retaliation in violation of the Rehabilitation Act. Any allegations regarding plaintiff's proposed *Bivens* claim shall not be included. Plaintiff shall have until July 5, 2017 to file a revised First Amended Complaint that comports with this Order. Defendant shall answer or otherwise respond to the First Amended Complaint by July 26, 2017.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: June 16, 2017